[No. 3987. Decided December 13, 1901.]

Annie Walsh, *Appellant,* v. John Bushell *et ux., Respondents.*

APPEAL — JUDGMENT WITHOUT FINDINGS BY COURT — FAILURE TO OBJECT — EFFECT.

The action of the court in rendering judgment in a cause tried by it, without making findings of fact or conclusions of law, cannot be urged as error on appeal, when the record does

not disclose any request therefor, or that the matter was called to the court's attention prior to the rendition of judgment.

RESCISSION OF CONTRACT — FRAUDULENT REPRESENTATIONS.

An action for the rescission of a contract of sale on the ground of deceit cannot be maintained, where the parties were dealing at arm's length and the representations alleged to be fraudulent were concerning facts of which the purchaser had ample opportunity to inform herself as to their truth or falsity, but. neglected to avail herself thereof.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge. Affirmed.

*Greene & Griffiths,* for appellant.

*Smith & Cole,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by appellant to rescind a contract of sale of certain lodging house furniture, which at the time of the sale was located in what was known as the "Palmer House," in the city of Seattle. The sale also carried with it the good will of the business of said lodging house. It was made by respondents to appellant on the 21st day of November, 1900, the terms being arranged on that day, and on the following day appellant took possession of said furniture and assumed control of said lodging house business. The consideration for the transfer was $2,150. Of said sum, $1,450 cash was paid by appellant, and to secure the payment of the remaining $700 she executed eight promissory notes for $87.50 each, maturing, respectively, at monthly intervals from date. A chattel mortgage upon said furniture was given by appellant to secure the notes. For some months prior to said sale, respondents, as tenants of the owner, had occupied the premises in which said lodging house business was conducted, and were, at the time of

37—26 WASH.

the sale, the owners of said furniture and the good will of said business. They appear to have held the premises under a tenancy from month to month, and had paid the rent monthly to a Mr. Chapin, the agent in Seattle for the owner of the property, who resided in the East. Chapin's place of business was at the Boston National Bank in Seattle. Some time before the sale, appellant learned, through some business chance agents in Seattle, that this furniture and lodging business were for sale. The price named to her by the agents was $2,500. She went and looked it over, and was told by respondent John Bushell that he had cleared $1,500 in ten months' time from said business. He also showed her the books of the house, which verified his statements. The price named was, however, greater than she was willing to pay. Some time afterwards she was in the real estate office of a Mr. Eggler, who told her that he had the same property for sale. She told him the price was more than she cared to pay, but that she was pleased with the property and location. He thereupon told her she could buy it for $2,150. On the same day she went with Mr. Eggler to see Bushell, and the terms of the sale as above outlined were then agreed upon. During the negotiations concerning the sale, appellant asked Bushell about the probability of her being able to continue in possession of the premises as a tenant. She told him she had heard it rumored that the building was to be torn down. He informed her that the building stood nine feet out into the street, and that there was talk of moving it back to the line of the street. She alleges that he further fraudulently represented to her as a fact that said building would remain on its then site, and would not be torn down or removed other than possibly removed to the line of the street; that she would be permitted to occupy the premises with said lodging

business as long as she paid the rent from month to month; that he had seen the agent of the owner, and explained that there would be a new tenant, and that all she need to do was to go to the agent the first of each month and pay the stipulated rent from month to month, as respondents had done; that, relying upon said statements, she made the purchase aforesaid; that in truth and in fact the respondents well knew said building would be torn down and destroyed within a month or two from the date of the sale, and not later than the month of February following; that upon the discovery of said deceit and fraud, she tendered back to respondents the possession of said premises and a reconveyance of said good will and furniture, and at the same time demanded a return of said notes, and also of the cash paid upon the purchase price, which demand was refused. The answer puts in issue the allegations concerning fraud. The cause was tried by the court, and judgment entered dismissing the action, with costs taxed to plaintiff. From said judgment plaintiff appeals.

Appellant assigns as error that the court rendered judgment without findings of facts or conclusions of law. The record does not disclose that appellant requested the court to make findings of facts and conclusions of law. In *Washington Rock Plaster Co. v. Johnson,* 10 Wash. 445 (39 Pac. 115), it was held that the objection that no finding of facts was ever made by the court in an action tried by it cannot be urged on appeal unless there has been a request for a finding, or an objection to the decree for want of one presented in the court below. This record discloses a service of the form of judgment upon appellant's counsel on the 13th day of February, 1901. The judgment bears date February 15th, but was not filed until February 16th. On the 16th of February appellant

filed exceptions to the judgment on the ground that no findings of facts or conclusions of law were made by the court. The judgment, bearing date the 15th day of February, must be presumed to have been signed by the court at that time, and the exceptions were not filed until the following day. There is nothing in the record to indicate that the matter was ever called to the attention of the court below. No order or entry appears to have been made touching the exceptions, and, as far as appears from the record, they were simply filed in the clerk's office, and not brought to the attention of the court. The case, therefore, falls within the rule of *Washington Rock Plaster Co. v. Johnson, supra.*

It is also assigned as error that the court erred in dismissing appellant's complaint and in denying the motion for new trial. Without doubt, one of the considerations in appellant's mind for making the purchase was the expectation that she might continue for a considerable time, at least, as the occupant of said lodging house premises. Such expectation controlled in a measure when the price she agreed to pay was fixed. It is disclosed by the evidence that at the time the purchase was agreed upon, and before it was closed, appellant learned that the agent of the owner was to be found at the Boston National Bank in Seattle. During the conversation at that time appellant suggested that respondent John Bushell accompany her to see the agent, that she might learn from him the intentions of the owner with reference to tearing down or removing the building. The real estate agent Eggler, who had taken her to see Bushell, and who was then present, was an acquaintance of long standing, and she was to some extent relying upon his advice concerning the purchase. When she suggested going to see the agent, either Bushell or Eggler—it is not clear from the evi-

dence which—remarked that the then rate of rent was
very low, and if she went to see the agent in all proba-
bility he would raise the rent, but if she said nothing,
and simply called and paid the same rate of rent each
month, the rate would probably not be changed.  It is
not material whether Bushell or Eggler first made the
above suggestion, since both of them did say in the course
of the conversation that, if she should then call upon the
agent it might have the effect indicated above.  Bushell
did not refuse to go with her to see the agent, but for the
reasons above stated she decided not to go.  She paid $20
that day, and it was agreed that they would meet the next
day, sign respectively the necessary papers, pay the bal-
ance of cash to be paid, and deliver possession, which was
done.    Meantime appellant did not call at the Boston
National Bank to see Mr. Chapin, the agent, but volun-
tarily closed the deal on the following day without seeing
him.    She says, in her testimony, that she had heard
rumors before she negotiated the purchase that the build-
ing would probably be torn down.  She was told by Bush-
ell that it would probably be moved back to the line of the
street, but to that she did not object.  She then delibe-
rately completed the purchase without making inquiry
of the agent, the person in authority, who could have in-
formed her as to the owner's intentions concerning the
building.    The agent was near at hand, his place of
business being in the same city where she resided, and
only a few blocks distant.  She was under no compulsion
to make the purchase, and it was easily within her power
to have ascertained the facts.  She avers in her complaint
that Bushell represented to her as a fact that the building
would not be torn down.  We do not think the evidence
shows more than a statement of his opinion in view of the

indefinite statements theretofore made by the agent of the owners to Bushell and others who testified. But even if it were true that he stated it as a fact, appellant must be held to have known that he had not authority to state what the fact was. She had such information as charged her with knowledge that only the owner or his agent could give her authoritative information. She had the opportunity to seek information from an authoritative source, but neglected to avail herself of such opportunity. It was her duty to insist upon this information from the proper source before completing the purchase.

The principle here involved was discussed in *Griffith v. Strand,* 19 Wash. 686 (54 Pac. 613). The court in that case said:

"We come now to a more serious objection, which is urged to the answer. The question which it raises may be thus stated: Do the representations and inducements, which are alleged to have been made and relied upon, relate to matters of fact, upon which the defendants could place reliance, or to matters of opinion and judgment, concerning which the law required the defendants to judge for themselves? It must not be forgotten that the contracting parties were dealing at arms' length. No fiduciary relations existed between them,—nothing to inspire confidence or disarm suspicion,—and there was no imbecility of age, weakness, or disease. The property in question was at hand, and an inspection of it by the defendants could have been made had they insisted upon it. The representations related solely to quantity, quality, and value, the truth or falsity of which could have been determined by an inspection. Under such circumstances, we think it will not do to hold that a party may successfully complain of his own failure to exercise ordinary care, prudence, and caution, when, by the exercise thereof, the injury of which he complains could not have arisen."

In *Washington Central Imp. Co. v. Newlands,* 11 Wash. 212 (39 Pac. 366), this court said:

"If people, having eyes, refuse to open them and look, and, having understanding, refuse to exercise it, they must not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. Written contracts would become too unstable if courts were to annul them on representations of this kind."

In *West Seattle Land & Imp. Co. v. Herren,* 16 Wash. 665 (48 Pac. 341), it was held that representations made by the seller of real estate to induce a purchaser to buy, although false, are not ground for rescission of the contract of purchase when there was no fiduciary relation existing between the parties, and when the truth or falsity of the representations could have been readily ascertained by the purchaser by investigation on his part. We think this case falls within the rule approved in the above cases, and that the judgment of the lower court is in accordance therewith.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT, DUNBAR and WHITE, JJ., concur.